FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 22 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

1   Frederick S. Jones, Esq.
2   105 Jonesboro Street
    McDonough, Georgia 30253
3   Attorney for Plaintiffs

4   **UNITED STATES DISTRICT COURT**
    **FOR THE NORTHERN DISTRICT OF GEORGIA**



5   David Smith and Shatei Smith        §
6         Plaintiffs,                   § Civil Action File Number:
                v.                      §
7   SunTrust Mortgage, Inc.             § **1-10-CV-3431**
    And All Persons Unknown, Claiming   § Plaintiffs Complaint for:
8   Any Legal Or Equitable Right, Title, Estate,  § (1) Negligence
9   Lien, Or Interest In the Property described   § (2) Fraud
    In The Complaint Adverse To Plaintiffs        § (3) To Set Aside Property Sale
10  Title, Or Any Cloud On Plaintiffs Title       § (4) To Void/Cancel Trust Deed Upon Sale
    Thereto; and Does 1-20, inclusive,            § (5) To Void/Cancel Assignment of Trust Deed
11        Defendants.                   § (6) Wrongful/Unlawful Foreclosure
                                        § (7) Breach of Implied Covenant of Good Faith
12                                      §       and Fair Dealing
                                        § (8) Unjust Enrichment
13                                      § (9) Quiet Title
                                        § (10) Slander of Title
14                                      § (11) Violation of RICO Laws
15                                      § (12) Violations of TILA Laws
                                        § (13) Violations of RESPA Laws
16                                      § (14) Violations of HERA Laws
17                                      § (15) Violations of HOEPA Laws
                                        § (16) Violations of Due Process
18
19  TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD

20  HEREIN:

21        PLAINTIFFS hereby allege as follows:

22                            **JURISDICTION**

23        This case is under the federal question (subject matter jurisdiction) of the United States

24  because the Plaintiffs are being discriminated against regarding the foreclosure of a nonparty

25  Defendant involved in this case, diversity jurisdiction is present because the parties have in

26  contention an amount in excess of $75,000 and the parties of this action represent different

27

28

states, and supplemental jurisdiction which for judicial economy will allow the court to resolve all issues between the parties in one forum.

**PARTIES**

1.      Defendant(s) SunTrust Mortgage, Inc., et al are, and at all times herein mentioned was, a Virginia company, organized and existed under the laws of the State of Virginia, doing business in Richmond County, Virginia at their Richmond Virginia, office located at 1001 Semmes Avenue, Richmond, Virginia 23224.

2.      Defendants are All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiffs Title, Or Any Cloud On Plaintiffs Title Thereto" are sued herein pursuant to Georgia code.

3.      Plaintiffs at all times herein mentioned resided at 4490 Berline Drive, Lithonia, GA 30038. Plaintiffs do not know the true names and capacities of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiffs are informed and believe and based on such information and belief aver that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of each DOE Defendant when they are ascertained.

4.      Plaintiffs are informed and believe and based on such information and belief that averred Defendants and DOE Defendants 1 through 20, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to

act as averred herein.  SunTrust Mortgage, Inc. and DOE Defendants 6 through 10, inclusive, are hereinafter collectively referred to as the "Foreclosing Defendants."

5.  Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

## GENERAL ALLEGATIONS

6.  On or about April 23, 2004 Plaintiffs agreed to buy and defendants entered an agreement for the sale and loans of property at 4490 Berline Drive, Lithonia, GA 30038.

7.  On or about the 21st day of August 2003, David & Shatei Smith refinanced their property at 4490 Berline Drive, Lithonia, GA 30038 with Sun Trust Mortgage, Inc.

8.  Sun Trust Mortgage, Inc. refinanced the FHA loan of $157,297.00 @ 6.00% for 30 years and the loan closed on August 21, 2003.

9.  The MIN # 100010401334299282 substantiates that their promissory note was securitized without disclosure to the Plaintiffs, which may cause lack of standing to execute the terms of the mortgage attached to the property located at 4490 Berline Drive, Lithonia, GA 30038.

10.  On or about the 21st day of August 2003, David & Shatei Smith and Defendants entered an agreement for the refinancing of the property at 4490 Berline Drive, Lithonia, GA 30038.

11.  Plaintiffs refinanced the loan on the Subject Property through SunTrust Mortgage, Inc. and executed a promissory note in favor of SunTrust Mortgage, Inc.  The note was secured by a security deed.

12.  Plaintiffs made each payment due on the new loan.

13.     On or about the 25th day of January 2010, SunTrust Mortgage Inc. allegedly acquired the servicing rights to Plaintiffs loan from SunTrust Mortgage.  Plaintiffs continued to make their payments to SunTrust Mortgage.

14.     On or about the 9th day of May 2009, Plaintiffs ceased to make their regular monthly mortgage payment on the loan to SunTrust Mortgage, Inc.

15.     Defendant foreclosed and received a default judgment against the defendant. SunTrust Mortgage, Inc. is not the owner of this property or the mortgage or note.

16.     On or about the 21st day of August 2003, Plaintiffs filed a promissory note in the amount of One hundred fifty seven thousand two hundred ninety seven dollars ($157,297.00) and Notice of Sale Under Power in Deed to Secure Debt with the proper agency SunTrust Mortgage that was accepted and processed.

17.     The security deed in this action has been converted into a security and placed in a mortgage pool. SunTrust Mortgage has no standing in this action.

18.     Based upon information and belief, on or around January 2010, prior to the foreclosure of the Subject Property but after the recording of the Notice of Default, SunTrust Mortgage (acting as beneficiary) assigned the SECURITY DEED to SunTrust Mortgage, Inc.  The Assignment by SunTrust Mortgage was improper because SunTrust Mortgage, Inc. never had a beneficial interest in the Subject Property and was merely a "nominee" under the Deed of Trust. Therefore, the Assignment was invalid and void.

19.     Based upon information and belief, there was no assignment of the Note with the SECURITY DEED, none of the Foreclosing Defendants are the holder of the Note in due course, and none of the Foreclosing Defendants were assigned the Note by Quality.  Accordingly, none of the Foreclosing Defendants were ever entitled to enforce the Note.

20.     Based upon information and belief, on or about January 2010, notwithstanding the fact that it was not the trustee under the SECURITY DEED and it did not have any authority from the beneficiary under the Deed of Trust, SunTrust Mortgage, Inc. went forward with the public auction which resulted in SunTrust Mortgage, being granted and conveyed the Subject Property by "SunTrust Mortgage allegedly acting as the duly appointed Trustee under the Deed of Trust.

21.     Based upon information and belief, the Trustee's Sale was also invalid because it took place without anyone ever presenting the original note, or original and valid assignments of the note, to SunTrust Mortgage, Inc. The failure to do so resulted in an invalid foreclosure sale.

22.     Based upon information and belief, at no time did SunTrust Mortgage know, in fact, who the actual beneficiary of the SECURITY DEED was. Further, Plaintiffs are informed and belief that the actual beneficiary of the SECURITY DEED NEVER provided a declaration to SunTrust Mortgage stating that Plaintiffs were in default under the terms of the SECURITY DEED and, accordingly, the recording of the Notice of Default and any subsequent documents relating to a non-judicial foreclosure were recorded in violation of Georgia Civil Code.

23.     On or about September 30, 2009, the Defendant advised that if Plaintiffs removed their property from bankruptcy, they could obtain a modification from Defendants. Plaintiffs did so only to discover that Defendant's Motion Granting Relief from the Stay. Plaintiffs received a courtesy copy of a Notice of Foreclosure from the Court which was Plaintiffs first notice that the Foreclosing Defendants had foreclosed on the Subject Property which was subsequently enjoined.

**COUNT I**

**NEGLIGENCE**

24.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 23, inclusive, as though fully set forth herein.

25.     At all times relevant herein, the Foreclosing Defendants, acting as Plaintiffs lender and loan servicer, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, accurate crediting of payments made by Plaintiffs.

26.     In taking the actions alleged above, and in failing to take the actions as alleged above, the Foreclosing Defendants breached their duty of care and skill to Plaintiffs in the servicing of Plaintiffs loan by, among other things, failing to properly and accurately credit payments made by Plaintiffs toward the loan, preparing and filing false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so.

27.     As a direct and proximate result of the negligence and carelessness of the Foreclosing Defendants as set forth above, Plaintiffs suffered general and special damages in an amount to be determined at trial.

## COUNT II

## FRAUD

28.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 27, inclusive, as though fully set forth herein.

29.     The Foreclosing Defendants engaged in a pattern and practice of defrauding Plaintiffs in that, during the life of the mortgage loan, the Foreclosing Defendants failed to properly credit payments made and foreclosed on the Subject Property based on Plaintiffs alleged non-payment which they knew to be false.

30.    The Foreclosing Defendants had actual knowledge that the Plaintiffs account was not accurate but that the Foreclosing Defendants could use the inaccuracy to foreclose on the Subject Property which had substantial equity, to recover its excessive fees, charges and interest. Plaintiffs made such payments and provided proof of the payments based on the improper, inaccurate, and fraudulent representations as to their account.  The Foreclosing Defendants also utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

31.    Additionally, the Foreclosing Defendants concealed material facts known to them but not to Plaintiffs regarding payments, notices, assignments, transfers, late fees and charges with the intent to defraud Plaintiffs.

32.    The Foreclosing Defendants made the above-referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiffs ' reliance, which the unsuspecting Plaintiffs justifiably relied upon, resulting in damage to their credit standing, costs and loss of their property.  Plaintiffs were unaware of the true facts. Had Plaintiffs known the true facts, Plaintiffs, among other things, would not have maintained the Foreclosing Defendants as their lender, servicer and trustee (and their alleged agents) and/or would have taken legal action immediately to save their house.

33.    As a result of the Foreclosing Defendants' fraudulent conduct, Plaintiffs have suffered compensatory, general and special damages in an amount to proof.  Additionally, the Foreclosing Defendants acted with malice, fraud and/or oppression and, thus, Plaintiffs is entitled to an award of punitive damages.

## COUNT III

### CANCELLATION OF A VOIDABLE CONTRACT

**UNDER REV TAX CODE §§ 23304.1, 23305A**

34.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 33, inclusive, as though fully set forth herein.

35.    SunTrust Mortgage, Inc. operates as a record-keeping database company in which SunTrust Mortgage, Inc. contracts with lenders to track security instruments in return for an annual fee.

36.    Based upon information and belief, SunTrust Mortgage, Inc. was at all times herein operating in the State of Georgia without registering as a foreign corporation to avoid paying taxes to the state.

37.    As a result of SunTrust Mortgage, Inc.'s failure to comply with the Georgia franchise tax laws, the SECURITY DEED alleged herein is voidable by Plaintiffs pursuant to Rev & Tax Code §§ 23304.1, 23304.1(b), and 23305a.

38.    Moreover, SunTrust Mortgage, Inc. is not in the business of creating evidences, and it is not a foreign lending institution. It does not originate loans, never had any true interest in the subject loan or Deed of Trust, and thereby does not meet any legal exceptions to the registration requirement for foreign corporations.

39.    SunTrust Mortgage, Inc. conducted business in Georgia when it was not registered with the Secretary of State. Specifically, it prepared and/or executed a Substitution of Trustee and Assignment of SECURITY DEED in April and May 2009. The substitution allowed the new Trustee, SunTrust Mortgage, Inc. to record a Notice of Default on the Subject Property.

40.    At all relevant times herein, SunTrust Mortgage, Inc. was not registered in Georgia and could not prepare or execute the Assignment of Deed of Trust. SunTrust Mortgage, Inc. had no legal authority to take such action. Deed s of Trust is contractual in nature. A contract made by

a corporation doing business in Georgia while that corporation has failed to perform its franchise tax obligations is voidable at the option of any party to the contract, other than the [delinquent] taxpayer. Thus, SunTrust Mortgage, Inc. did not have the legal capacity to enter into a contract with Plaintiffs or anyone else, and Plaintiffs have the option of voiding the contract. Therefore, any action that SunTrust Mortgage, Inc. took with regard to assigning the within SECURITY DEED and substituting the trustee would be ultra vires and void.

41.     Plaintiffs hereby expressly requests adjudication to the effect that the assignment of the SECURITY DEED and substitution of trustee by SunTrust Mortgage, Inc. are void.

## COUNT IV

### TO SET ASIDE TRUSTEE'S SALE

42.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 41, inclusive, as though fully set forth herein.

42.     The Foreclosing Defendants never had the legal authority to foreclose, i.e., the authority to exercise the power of sale as an assignee of the Note and Deed of Trust, because the Foreclosing Defendants' interest was never acknowledged and recorded in violation of Civil Code, resulting in the non-judicial foreclosure sale being void ab initio.

43.     Moreover, the Foreclosing Defendants never had the legal authority to foreclose because the instrument (SECURITY DEED), which permitted foreclosure if the borrower was in default, is void as it was improperly assigned and/or transferred to the Foreclosing Defendants from the original lender. Therefore, the SECURITY DEED could not provide a basis for a foreclosure, and the non-judicial foreclosure is void ab initio.

44.     Accordingly, Plaintiffs hereby request an order of this Court that the Trustee's Sale was irregular in that it was legally void and conducted without any right or privilege by the Foreclosing Defendants.

## COUNT V

### TO VOID OR CANCEL SECURITY DEED UPON SALE

45.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 44, inclusive, as though fully set forth herein.

46.     Although the SECURITY DEED upon sale appears valid on its face, it is invalid, and of no force and effect, for the reasons set forth above including, inter alia, the fact the SECURITY DEED which purportedly secured the Note, which served as the basis for a claim to have the right to conduct a non-judicial foreclosure was at all times void due to the wrongful and improper assignment to the Foreclosing Defendants.

47.     Plaintiffs are therefore entitled to an order that the SECURITY DEED upon sale is void ab initio and cancelling such SECURITY DEED.

## COUNT VI

### TO VOID OR CANCEL ASSIGNMENT OF SECURITY DEED

48.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 47, inclusive, as though fully set forth herein.

49.     The assignment of the SECURITY DEED is invalid, and of no force and effect, for the reasons set forth above including, inter alia, the fact the «MAT_DEFENDANT », did not have standing or the legal authority to assign the SECURITY DEED which purportedly secured the Note, and which served as the basis for a claim to have the right to conduct a non-judicial foreclosure.  Thus, the assignment of the SECURITY DEED was at all times void.

50.     Plaintiffs are therefore entitled to an order that the Assignment of the SECURITY DEED is void ab initio and cancelling such Assignment.

## COUNT VII

### WRONGFUL/UNLAWFUL FORECLOSURE

51.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 50, inclusive, as though fully set forth herein.

52.     Plaintiffs are informed and believe and thereon allege that after the origination and funding of their loan, it was sold to investors as a "Mortgage backed security" and that none of the Foreclosing Defendants in this action owned this loan, or the corresponding note.  Moreover, none of the Foreclosing Defendants in this action were lawfully appointed as trustee or had the original note assigned to them.  Accordingly, none of the Foreclosing Defendants in this action had the right to declare default, cause notices of default to be issued or recorded, or foreclose on Plaintiffs interest in the Subject Property.  The Foreclosing Defendants were not the note holder or a beneficiary at any time with regard to Plaintiffs loan.

53.     Plaintiffs further alleges on information and belief that none of the Foreclosing Defendants in this action are beneficiaries or representatives of the beneficiary and, if the Foreclosing Defendants allege otherwise, they do not have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

54.     Plaintiffs further allege on information and belief that the loan was sold or transferred without notifying the Plaintiffs in writing.  Therefore, the loan is void of legal rights to enforce it.

55.     Additionally, The Foreclosing Defendants violated Georgia Civil Code which requires a "Mortgagee, beneficiary or authorized agent" to "contact the borrower or person by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid

foreclosure and requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent", including attempt "with due diligence to contact the borrower as required by this section."

56.    None of the Foreclosing Defendants contacted Plaintiffs to discuss their financial situation. Moreover, none of the Foreclosing Defendants explored options with Plaintiffs to avoid foreclosure. Additionally, none of the Foreclosing Defendants informed Plaintiffs of the right to have a meeting within 14 days of said contact. Accordingly, the Foreclosing Defendants did not fulfill their legal obligation to Plaintiffs.

57.    Thus, the Foreclosing Defendants engaged in a fraudulent foreclosure of the Subject Property in that the Foreclosing Defendants did not have the legal authority to foreclose on the Subject Property and, alternatively, if they had the legal authority, they failed to comply with Georgia Civil Code.

58.    As a result of the above-alleged wrongs, Plaintiffs has suffered general and special damages in an amount to be determined at trial.

**COUNT VIII**

**BREACH OF CONTRACT**

59.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 58, inclusive, as though fully set forth herein.

60.    Plaintiffs original loan agreement set forth dates by which monthly principal and interest payments were due, and when late fees and other charges could be assessed.

61.    Alternatively, if the original note and SECURITY DEED was properly assigned to Defendants, Defendants breached the note and SECURITY DEED that Plaintiffs signed in July

2007. The terms of the note required payments made by Plaintiffs to be applied properly to the note.

62.     The Foreclosing Defendants breached the note and SECURITY DEED by failing to apply the payments made by Plaintiffs in August and September 2008 to Plaintiffs loan, the result of which led to the Foreclosing Defendants eventually foreclosing on the Subject Property.

63.     As a proximate result of Defendants' breaches, Plaintiffs has suffered compensatory damages in an amount to be proven at trial.

**COUNT IX**

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

64.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 63, inclusive, as though fully set forth herein.

65.     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

66.     Alternatively, if the note and SECURITY DEED was validly and properly assigned to the Foreclosing Defendants, the Foreclosing Defendants did not act in good faith and did not deal fairly with Plaintiffs in connection with the note and SECURITY DEED when they refused to properly REFUSED TO ACCEPT THE PLAINTIFFS PROMISSORY NOTE AND UCC FINANCING STATEMENTS to their loan and thereafter foreclosed on the Subject Property

even though Plaintiffs provided proof of payments for the allegedly skipped months and thereafter refused to resolve the mistake with Plaintiffs in an equitable fashion.

67.     The Foreclosing Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint. They were required to exercise such power in good faith.

68.     The Foreclosing Defendants engaged in such conduct to drive Plaintiffs into foreclosure so that they could acquire the Subject Property with its large equity at a bargain basement price. These actions were a bad faith breach of the contract between Plaintiffs and the Foreclosing Defendants, which show that they had no intention of performing the contract, consisting of the original note and deed of trust, in good faith.

69.     SunTrust Mortgage, Inc. willfully breached their implied covenant of good faith and fair dealing with Plaintiffs when SunTrust Mortgage, Inc. allowed their alleged agent to execute the Assignment of the SECURITY DEED in order to appoint a new Trustee to begin foreclosure on the Subject Property.

70.     As a result of the Foreclosing Defendants' breaches of this covenant, Plaintiffs have suffered general and special damages in an amount to be determined at trial.

**COUNT X**

**UNJUST ENRICHMENT**

71.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 70, inclusive, as though fully set forth herein.

72.     By their wrongful acts and omissions, the Foreclosing Defendants have been unjustly enriched at the expense of Plaintiffs, and thus Plaintiffs has been unjustly deprived.

73.     By reason of the foregoing, Plaintiffs seeks restitution from the Foreclosing Defendants, and an order of this Court disgorging all profits, benefits, and other compensation obtained by the Foreclosing Defendants from their wrongful conduct.

## COUNT XI

## QUIET TITLE

**(AS TO DEFENDANTS SUNTRUST MORTGAGE, INC; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS TITLE, OR ANY CLOUD ON PLAINTIFFS TITLE THERETO; AND DOES 1 THROUGH 20)**

74.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 73, inclusive, as though fully set forth herein.

75.     Plaintiffs are the equitable owners of the Subject Property, which has the following legal description:

76.     Plaintiffs seek to quiet title against the claims of Defendants SunTrust Mortgage, Inc., **ALL** PERSONS UNKNOWN, CLAIMING ANY LEGAL OR QUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS TITLE, OR ANY CLOUD ON PLAINTIFFS TITLE THERETO; and DOES 1 through 20 (collectively referred to herein as the "Title Defendants") as the Title Defendants hold themselves out as entitled to fee simple ownership of the Subject Property by and through their purchase of the property at the trustee's sale held on or about May 4, 2009. In fact, the Title Defendants had no right to title or interest in the Subject Property and no right to entertain any rights of ownership including the right to foreclosure, offering the Subject Property

for sale at a trustee's sale, demanding possession or filing cases for unlawful detainer. Nevertheless, the Title Defendants proceeded with a non-judicial foreclosure sale, through SunTrust Mortgage, Inc. as alleged trustee, illegally and with unclean hands.  Plaintiffs are willing to tender the amount received subject to equitable adjustment for the damage caused to Plaintiffs by the Title Defendants' activities.

77.    Defendant, SunTrust Mortgage, Inc. foreclosed on the Subject Property.  At the time that SunTrust Mortgage, Inc. signed the Notice of Default, SunTrust Mortgage, Inc. had not been substituted as the trustee in place of T.D. Service Company.  As the Notice of Default must be signed by the trustee, either original or substituted, and the beneficiary or trustee, either original or substituted, must comply with Georgia Civil Code, the trustee's sale is void because SunTrust Mortgage, Inc. was not the trustee at the time the Notice of Default was signed in compliance with The Georgia Civil Code.  Thus, the trustee and beneficiary failed to follow the statutory rules for a valid foreclosure under the Georgia Civil Code and it is, therefore, void.

78.    Additionally, the trustee's sale is void because neither SunTrust Mortgage, Inc nor any of the Foreclosing Defendants complied with the requirements of the Civil Code.

79.    Plaintiffs seeks a judicial declaration that the title to the Subject Property be vested in Plaintiffs alone and the Title Defendants and each of them be declared to have no interest estate, right, title or interest in the subject property and that the Title Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Plaintiffs rights.

## COUNT XII

## SLANDER OF TITLE

80.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 79, inclusive, as though fully set forth herein.

81.    Pursuant to, among others, OCGA § 44-14-610,only the beneficiary of a SECURITY DEED or a beneficiary's assignee or the agent of a beneficiary or its assignee may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale.

> OCGA § 44-14-610,No action, whether seeking legal or equitable relief or both, as to real property in this state shall operate as a lis pendens as to any such *real property involved* therein until there shall have been filed in the office of the clerk of the superior court of the county where the real property is located and shall have been recorded by the clerk in a book to be kept by him for the purpose a notice of the institution of the action containing the names of the parties, the time of the institution of the action, the name of the court in which it is pending, a description of the *real property involved,* and a statement of the relief sought regarding the property.

82.    SunTrust Mortgage, Inc. purportedly but falsely acting as either the trustee or the agent of the beneficiary of the SECURITY DEED or the agent of SunTrust Mortgage, Inc. wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property.

83.    Later, SunTrust Mortgage, Inc. again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the SECURITY DEED or the agent of SunTrust Mortgage, Inc. wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property.

84.    Finally, SunTrust Mortgage, Inc. again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the SECURITY DEED or the agent of SunTrust Mortgage, Inc. wrongfully and without privilege, caused a SECURITY DEED  Upon Sale to be recorded against the Subject Property.

85.    None of the Foreclosing Defendants, whether jointly or severally, were ever a trustee, beneficiary or assignee of any beneficiary of any SECURITY DEED recorded against the

Subject Property.  Accordingly, they wrongfully caused the recording of the Notice of Default, Notice of Trustee's Sale and SECURITY DEED Upon Sale against the Subject Property.

86.    SunTrust Mortgage, Inc. wrongfully and without privilege, has published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Plaintiffs interest in the Subject Property.

87.    By doing the acts described above, the Foreclosing Defendants have slandered Plaintiffs title to the Subject Property.

88.    In that the conduct and acts of the Foreclosing Defendants violated, among others, Georgia Civil Code), such conduct and acts were not privileged.

89.    The conduct of the Foreclosing Defendants caused Plaintiffs to suffer general and special damages in an amount to be proven at trial.

## COUNT XIII

## CIVIL RICO

90.    At all relevant times, Defendants, and coconspirators were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3), 962(c) and O.C.G.A § 16-14-4.

91.    In addition, Defendants, SunTrust Bank Mortgage, Inc. and other coconspirators formed an association-in-fact for the purpose of defrauding innocent and unsuspecting Borrowers in the State of Georgia.  This association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C § 1961(4) and O.C.G.A § 16-14-4.

92.    At all relevant times, this securitization mortgage pool enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962(c) and O.C.G.A § 16-14-4.

93.     At all relevant times, Defendants SunTrust Bank Mortgage, Inc. and other coconspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c) and O.C.G.A § 16-14-4.

94.     Specifically, at all relevant times, Defendants and other coconspirators engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) and O.C.G.A § 16-14-4 by engaging in the acts set forth above.

95.     The acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); section 1344 (relating to financial institution fraud); section 1951 (relating to interference with commerce, robbery, or extortion); section 1956 (relating to the laundering of monetary instruments); section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity); Defendants SunTrust Bank Mortgage, Inc. and other coconspirators each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity. The acts of racketeering activity referred to in the previous paragraph constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5). The acts alleged were related to each other by virtue of common participants, a common victim (the Plaintiffs), a common method of commission, and the common purpose and common result of defrauding the Plaintiffs of thousands of dollars and enriching the conspirators and coconspirators at the Plaintiffs' expense while concealing the coconspirators' fraudulent activities.

96.     The fraudulent scheme continued over several years and threatens to continue despite the institution of this action. As a result of Defendants and the other conspirators and coconspirators' violation of 18 U.S.C. § 1962(c), the Plaintiffs have lost nearly all their savings

1  as a result of the racketeering activities conducted in the fraudulent scheme and as part of the

2  prohibited activities herein alleged.

3  97.    As a result of their misconduct, Defendants are liable to the Plaintiffs for their losses in

4  an amount to be determined at trial.  Pursuant to RICO, 18 U.S.C. § 1964(c), the Plaintiffs are

5  entitled to recover treble damages plus costs and attorneys' fees from Defendants.

6  98.    Defendant committed RICO pursuant to O.C.G.A. § 16-14-3 (8) and O.C.G.A § 16-14-4.

7  regarding the predicate acts of securitizing notes thereby modifying the instrument which is at

8  the basis of the claim of racketeering activity as defined in the above mentioned code section.

9  Defendant conducted this activity with Plaintiff's note and the notes of others similarly situated

10  regarding lenders, schemes or transactions that have similar intents, results accomplices and

11  victims.  In addition Defendants have committed Civil Rico pursuant to Georgia Law (*See*

12  *Forensic Audit Summary Exhibit "A."*):

> According to the Official Code of Georgia Annotated a pattern of racketeering activity means, "Engaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such acts occurred after July 1, 1980, and that the last of such acts occurred within four years, excluding any periods of imprisonment, after the commission of a prior act of racketeering activity" O.C.G.A. § 16-14-3 (8)

## COUNT XIV

## RICO CONSPIRACY

99.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set

forth in this cause of action.

100.    At all relevant times, the Plaintiffs were "persons" within the meaning of RICO, 18

U.S.C. §§ 1961(3) and 1964(c).

101.    At all relevant times, Defendants and other coconspirators was each a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(d).

102.    At all relevant times, Defendants and other coconspirators formed an association-in-fact for the purpose of defrauding the Plaintiffs and the class members. This association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

103.    At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962(c).

104.    As set forth in Count One, Defendants SunTrust Bank Mortgage, Inc. other coconspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

105.    At all relevant times, Defendants and other coconspirators each were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

106.    Defendants SunTrust Bank Mortgage, Inc. and other coconspirators committed and caused to be committed a series of overt acts in furtherance of the Conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

107.    As a result of Defendants SunTrust Bank Mortgage, Inc. and other coconspirators' violations of 18 U.S.C. § 1962(d), the Plaintiffs and the class members they represent have lost millions of dollars in the fraudulent schemes Defendants created, organized, serviced, and continue to operate and run.

108.    As a result of the Conspiracy, Defendants are liable to the Plaintiffs for their losses in an

amount to be determined at trial.

109.    Pursuant to RICO, 18 U.S.C. § 1964(c), the Plaintiffs and the class members they

represent are entitled to recover threefold their damages plus costs and attorneys' fees from

Defendants.

**COUNT XV**

**RICO EXTORTION**

Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in

this cause of action.

110.    At all relevant times, the Plaintiffs were "persons" within the meaning of RICO, 18

U.S.C. §§ 1961(3) and 1964(c).

111.    At all relevant times, SunTrust Bank Mortgage, Inc. and other coconspirators was each a

"person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(d).

112.    At all relevant times, Defendants and other coconspirators formed an association-in-fact

for the purpose of defrauding the Plaintiffs and the class members. This association-in-fact was

an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

113.    At all relevant times, this enterprise was engaged in, and its activities affected, interstate

and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962(c).

114.    Defendants and other coconspirators associated with this enterprise conducted or

participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of

racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO,

18 U.S.C. § 1962(c).

115.    At all relevant times, Defendants and other coconspirators each were associated with the

enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and

participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

116.    Defendants and other coconspirators committed and caused to be committed a series of overt acts in furtherance of the Conspiracy and to affect the objects thereof, including but not limited to the acts set forth above and including repeated threats of foreclosure in an effort to deprive Plaintiffs of their legal and beneficial interest in their homes if they did not pay the unlawful loans that Defendants created for Plaintiffs.

117.    As a result of Defendants and other coconspirators' violations of 18 U.S.C. § 1962(b)(c), the Plaintiffs and the class members they represent have lost millions of dollars in the fraudulent schemes Defendants created, organized, serviced, and continue to operate and run.  The threat of imminent foreclosure is but one of the unlawful activities that Defendants engage in through a pattern of racketeering activity and the collection of unlawful debts.

118.    As a result of the Defendants actions and associations with an enterprise engaged in interstate and foreign commerce, Defendants are liable to the Plaintiffs for their losses in an amount to be determined at trial.

119.    Pursuant to RICO, 18 U.S.C. § 1964(c), the Plaintiffs and the class members they represent are entitled to recover threefold their damages plus costs and attorneys' fees from Defendants.

120.    Defendant false advertised that they were loaning money to Plaintiff, when in fact they were using a massive securities scheme to counterfeit promissory notes into securities to sell to undisclosed investors.  Defendants used the US Mail to deceive Plaintiff into signing a contact of monthly payments which they believed they could afford.  However, Defendants in concert neglected to give Plaintiff notice that within a short time frame, Plaintiff's monthly payments

1   would increase based on fraudulent activities initiated with fraud within Plaintiff's closing

2   documents.

3   121.   In order to perpetrate this fraud, a conspiracy of enterprises, inclusive but not limited to

4   the appraiser that stripped the property of equity, a nominal lender (broker) and actual lender,

5   hypothecator of the promissory note, underwriter, loan officer and other businesses such as

6   Trinity Park Mortgage, all enriched themselves from the inflated loan amount and interest, while

7   the congregation impoverished by accepting a loan with excessive fees and costs ultimately

8   triggering the foreclosure expected by Defendants.

9

## COUNT XVI

## COMMON LAW FRAUD (CONCEALMENT)

122.   Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set

forth in this cause of action.

123.   Pursuant to RESPA, TILA, and the common law, Defendants SunTrust Mortgage, Inc.

and other coconspirators had a duty to properly disclose to Plaintiff that they had entered into an

agreement whereby illegal and improper "kickbacks" or "referral fees" were to be paid and split

between SunTrust Mortgage, Inc. and other coconspirators had a duty to properly disclose the

other material facts set forth above and required to be disclosed by RESPA and TILA.  The

Defendants' agreement to pay, the actual payment of these fees, and the other facts set forth

above, were material facts.

124.   The Defendants failed and/or refused to properly disclose these material facts to the

Plaintiff in spite of, and in violation of, their statutory and common law duties to do so.

125.   The concealment and obfuscation of the agreement, the actual payment of these fees and

the other material facts was undertaken by the Defendants to deceive Plaintiff's and the other

class members, and to keep them from "asking questions" concerning the rates at which the money was lent to them, in order to maximize the Defendants' benefit from the transactions. The Defendants' actions were therefore taken with actual malice.

126.   Plaintiffs and the other class members reasonably relied upon the concealment by following through with the transactions, and not questioning the same.

127.   As a direct result of the Defendants' fraudulent concealment, Plaintiff's and other class members have suffered considerable damages.

## COUNT XVII

## CONSTRUCTIVE FRAUD

128.   Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

129.   Plaintiff alleges TILA violations only in order to demonstrate the constructive fraud of Defendants without waiving their constructive fraud claims.  Plaintiff is also aware that TILA claims are waived as it applies to commercial loans pursuant to 15 U.S.C. § 1602(h); American Exp. Co. v. Koerner, 452 U.S. 233, 242-243 (1981); and only extends to consumer credit transactions pursuant to 15 U.S.C. § 1603; K/O Ranch, Inc. by Olson v. Northwest Bank of Black Hills, 748 F.2d 1246, 1248 (8th Cir. 1984.  But notice of the TILA infraction is required in order to demonstrate Plaintiff's Constructive Fraud Claim.

## COUNT XVIII

## COMMON LAW FRAUD (INDUCEMENT)

130.   Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

131.   Defendants SunTrust Mortgage, Inc. and other coconspirators expressly or impliedly

1   represented to Plaintiff that it would secure for them the most affordable loan available to them

2   by accurately accounting for their monthly and yearly income.  The requirements for Common

3   Law Fraud are:

4         a.     a false statement of material fact;

5         b.     the party making it knew or believes it to be untrue;

6         c.     the party to whom the statement was made had a right to rely on the statement;

7         d.     the party to whom the statement was made did rely on the statement;

8

9         e.     the statement was made for the purpose of inducing the other party to act; and

10        f.     the reliance by the person to whom the statement was made led to that party's

11  injury.

12  132.    Defendants SunTrust Mortgage, Inc. and other coconspirators meet each and every one of

13  these common law fraud elements.  Specifically, a) they made several false statements of

14  material fact by failing to provide an accurate Good Faith Estimate, falsely completing the

15  Federal Loan Application as to monthly salaries actually earned by Plaintiff, and falsely

16

17  indicating that they procured an affordable loan on Defendant's behalf; b) Defendant's knew

18  their assertions were NOT true; c) Plaintiff's, as interested borrowers, had a right to rely on the

19  statement; d) Plaintiff's did rely on the statement; e) Plaintiff's were induced to act on the false

20  statements of material fact made by Defendant; and f) Plaintiffs have been materially,

21  substantially, and irrevocably injured by the misrepresentations of Defendant.

22  133.    By providing incentives for and regularly and knowingly accepting the "fruits of the

23  fraud", Defendant directly participated in the fraudulent scheme.  Further, by first originating the

24  low interest teaser loans and not properly disclosing the negative amortization nature of those

25  loans, Defendants instead created the false impression that Borrowers were given the most

26

27

28

affordable loan for their circumstances, when in reality they obtained for Plaintiff loans that they could not ultimately afford. In fact, Defendant intended to obtain for Plaintiff a higher rate than was available from the lender simply so that Defendant could earn for itself a higher "kickback", "referral fee" or yield spread premium at the expense of Plaintiff.

134.    Defendant's representation that they had accurately and truthfully completed or supervised the completion of the Federal Loan Application was a material fact in that Plaintiff's would not have conducted themselves or gone through with the Transaction as they did, had they known of or become aware of Defendants' obfuscations and true intentions. Defendant's misrepresentations as to their intentions materially induced Plaintiff to enter into the mortgage loans obtained for them by Defendants, and Plaintiff reasonably relied upon their false representations.

135.    Defendants directed, supervised, or directly or indirectly enticed Plaintiff into fraudulent inducement.

136.    As a direct result of these Defendants' fraudulent inducement, Plaintiff suffered, and will continue to suffer, considerable damages including foreclosure.

**COUNT XIX**

**CONSPIRACY**

137.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

138.    The Defendants SunTrust Mortgage, Inc. and other coconspirators agreed amongst themselves to take the illegal and improper actions described above, including taking actions that violated RESPA, TILA, and various common law duties, to reach the goal of maximizing their financial benefit from the loan transactions at the expense of Plaintiff's and the other class

members.

139.   The Defendants' actions were undertaken with actual malice in that a desire to deceive Plaintiff's and other class members motivated them.

140.   As a result of the Defendants' conspiracy, Plaintiff's and other class members suffered, and will continue to suffer, considerable damages.

## COUNT XX

### RESPA VIOLATIONS

141.   Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

142.   RESPA generally prohibits the payment of "kickbacks" or "referral fees" to any person in connection with a federally related mortgage loan.

143.   Plaintiff's loan was a federally related mortgage loan.  The payment of the so-called "yield spread premiums" constituted a prohibited "kickback" or "referral fee," and violated RESPA even if the same were properly disclosed, which they were not.

144.   As a direct result of the Defendants' violations of RESPA, the Plaintiff has suffered, and will continue to suffer, considerable damages.

145.   SunTrust Mortgage, Inc. and other coconspirators' acquisition of the subject loans was not a *bona fide* secondary market purchase, but rather was designed to give the impression of a secondary market purchase while operating as the functional equivalent of "table funding."  As such, Defendants SunTrust Mortgage, Inc. and other coconspirators are liable to the same extent under RESPA.  12 U.S.C. § 2607(d)(2) provides that Plaintiff and the other class members may recover as civil damages three times the amount of the unlawful charges or payments as referenced above.  In addition, 12 U.S.C. § 2607(d)(5) permits Plaintiff to recover their litigation

costs and attorneys' fees occasioned by the Defendants' violations of RESPA.

## COUNT XXI

## FRAUD IN THE FACTUM

146.    In tracing the documents regarding Plaintiff's loan, no disclosure was provided regarding

the Creditor's true identity or the method in which the creditor obtains the proceeds of

foreclosure when this is done.  On the record there exist no accounting as to what payments were

made, whether they were paid to the right entity and whether proper credit was applied.  Due to

the issue of securitization, a technicality of actual ownership of the debt or the burden of proof of

indebtedness is essential when there is indication of Fraud.  The REAL question is whether the

foreclosing party is a true party in interest or NOT.

147.    In Plaintiff's SEC document filings This Mortgage was pooled with other John Does (1-

100) and sold on the open market, making the true Owners of this Mortgage and Note truly

unknown and mixed with a pool of beneficiaries.

148.    Without trial, no records exist that constitute the evidence, no testimony of the witness

referring to the fraud is available.  In re A.B., 308 Ill.App. 3d 227, 719 N.E.2d 348 (2d Dist.

1999).  Nor is such an affidavit made sufficient by omitting facts that it is based on a review of

loan records, if it appears that the affiant did not personally receive or observe the reception of

all of the borrowers payments.  Hawaii Community Federal Credit Union v. Keka, 94 Haw. 213,

11 P.3d 1, 10 (2000).  No underlying record was made available to the

court because this action is non judicial.

149.    Red Flag indicators exist which point to Defendant using the signature of Plaintiff on the

promissory note and without explanation, knowledge or consent converted this note into a

security.

150.    But a negotiable note is ONLY notes where there is an unconditional promise to pay. The pooling with the aggregator, the placement of parts of the pool into tranches (divisions) of the SPV (corporation that issued the certificates of mortgage backed securities).  In this case the obligation was created by the funding of the loan.  The source of the loan was an undisclosed party and a form of Identity Theft by false use of Plaintiff's signature.

151.    With the pooling agreement at the aggregator (loan wholesaler) level combined with the re-pooling at the SPV level the note was converted from an unconditional promise to pay to a conditional promise to pay i.e., if you didn't pay your note, it is quite possible that a third party could and in fact did pay part or all of the payments or the principal of your note.  The presence of insurance, credit default swaps, bailouts from the U.S. Treasury and Federal Reserve indicate that the only party who could possibly claim to be holder in due course has been paid in part or in full.

152.    Therefore two extremely high probabilities remain virtually certain: (1) SunTrust Mortgage, Inc. and other coconspirators were paid in full contemporaneously with Plaintiff's loan closing and (2) the note was negotiated despite the fact that it was non-negotiable.  This leaves Defendant's on Plaintiff's closing documents in the position of (a) having been paid in full and probably not even addressing or showing the loan on its balance sheet and (b) lacking an argument that it "negotiated" (Sold) the note to a third party. If the note was not sold and the lender received payment in full, neither the obligation nor the security (mortgage) exists by operation of law which would actually entitle Defendant to file a foreclosure against the property.  The issue and demand that the  bank produce the original documents and endorsements or assignments is hereby raised.

**COUNT XXII**

**VIOLATIONS OF HOME OWNERSHIP EQUITY PROTECTION ACT**

153.    Plaintiff reaffirm and reallege the above paragraphs hereinabove as if set forth more fully herein below.

154.    In 1994, Congress enacted the Home Ownership Equity Protection Act ("HOEPA") which is codified at 15 USC sec. 1639 et seq. with the intention of protecting homeowners from predatory lending practices targeted at vulnerable consumers. HOEPA requires lenders to make certain defined disclosures and prohibits certain terms from being included in home loans.  In the event of noncompliance, HOEPA imposes civil liability for rescission and statutory and actual damages.

155.    Plaintiffs are "consumers" and each Defendant is a "creditor" as defined by HOEPA.  In the mortgage loan transaction at issue here, Plaintiff were required to pay excessive fees, expenses, and costs which exceeded more than 10% of the amount financed.

156.    Pursuant to HOEPA and specifically 15 USC sec. 1639(a)(1), each Defendants are required to make certain disclosures to the Plaintiff which are to be made conspicuously and in writing no later than three (3) days prior to the closing.

157.    In the transaction at issue, Defendants were required to make the following disclosure to Plaintiff by no later than three (3) days prior to said closing: "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application.  If you obtain this loan, the lender will have a mortgage on your home.  You could lose your home and any money you have put into it, if you do not meet your obligation under the loan."

158.    Defendants violated HOEPA by numerous acts and material omissions, including but not limited to:

1

          (a)     failing to make the foregoing disclosure in a conspicuous fashion;

2

          (b)     engaging in a pattern and practice of extending credit to Plaintiff without

3 regard to their ability to repay in violation of 15 USC sec. 1639(h).

4 159.    By virtue of the Defendants' multiple violations of HOEPA, Plaintiffs have a legal right

5 to rescind the consumer credit transaction the subject of this action pursuant to 15 USC sec.

6 1635. This Complaint is to be construed, for these purposes, as formal and public notice of

7 Plaintiff's Notice of Rescission of the mortgage and note.

8

9 160.    Defendants further violated HOEPA by failing to make additional disclosures, including

10 but not limited to Plaintiff not receiving the required disclosure of the right to rescind the

11 transaction; the failure of Defendants to provide an accurate TIL disclosure; and the amount

12 financed being understated.

13 161.    As a direct consequence of and in connection with Plaintiff' legal and lawful exercise of

14 their right of rescission, the true "lender" is required, within twenty (20) days of this Notice of

15 Rescission, to:

16

17           (a)     desist from making any claims for finance charges in the transaction;

18           (b)     return all monies paid by Plaintiff in connection with the transaction to the

19 Plaintiff;

20           (c)     satisfy all security interests, including mortgages, which were acquired in

21 the transaction.

22 162.    Upon the true "lenders" full performance of its obligations under HOEPA, Plaintiff shall

23 tender all sums to which the true lender is entitled.

24 163.    Based on Defendants' HOEPA violations, each of the Defendants is liable to the Plaintiff

25 163.    Based on Defendants' HOEPA violations, each of the Defendants is liable to the Plaintiff

26 for the following, which Plaintiff demand as relief:

27

28

**COUNT XXIII**

**STANDING**

164.    There is often an assumption by the Court that Defendant holds the Note and Mortgage required in this action.

165.    Defendant did not issue Plaintiff the Mortgage referred to in Defendant's complaint.

166.    In order to recover on a promissory note, the Defendant must prove:

    (1)    The existence of the note in question;

    (2)    That the party sued signed the note;

    (3)    That the Defendant is the owner or holder of the note in due course; and

    (4)    That a certain balance is due and owing on the note.

167.    There is no evidence of an assignment from the real party in interest to the Defendant attached to the complaint with regard to the mortgage and Defendant failed to attach a copy of the note.

168.    Defendant has not produced an assignment, nor is there any evidence of an assignment recorded in the public records.

169.    The Defendant has failed to establish in any of its papers or filings it owned or held the mortgage or the note at the commencement of this action.  Unless Defendant establishes definitely that they are the owners of the mortgage or the note at the commencement of this action they are without a remedy in this action.

170.    Thus far on the record Defendant has proffered no proof that the Defendant ever held the mortgage and or took possession of the mortgage or note, which leaves Defendant with NO CLAIM OR RIGHT TO PROSECUTE THE FORECLOSURE.

171.    There is no proof that a proper chain of assignments took place between parties in interest nor were the lien positions of the parties properly perfected.

172.    Federal Courts in the Eleventh Circuit have ruled that the only way to prove the perfection of any security, including promissory notes, is by actual possession of the security. Current or prior possession must be proven. See *Downing v. First National Bank of Lake City*, 81 So.2d 486 (Fla. 1955); *Figueredo v. Bank Espirito Santo*, 537 So.2d 1113 (Fla. 3rd DCA 1989); *Pastore-Borroto Development, Inc. v. Marevista Apartments, M.B., Inc.*, 596 So.2d 526 (Fla. 3rd DCA 1992); *Nat'l. Loan Investors, L.P. v. Joymar Asocs.*, 767 So.2d 549, 551 (Fla. 3rd DCA 2000).

173.    "Only those who have standing to be heard in the judicial proceeding may participate in it." Byrom v. Gallagher, 578 So. 2d 715, 717 (Fla. 5th DCA 1991)

174.    One who does not have ownership, possession, or the right to possession of the mortgage and the obligation secured by it, may not foreclose the mortgage." 37 Fla. Jur. Mortgage and Deeds of Trust Sec. 240, citing In re: Shelter Development Group, Inc., 50 B.R. 588 (Bankr. S.D.Fla. 1985).

175.    Defendant attached to the complaint a mortgage identifying Bank of America an entity that is not the Defendant, as the owner and holder of the mortgage.  This document conflicts with the Defendant's allegations of material facts in the complaint as to ownership of the subject note and or mortgage.

176.    The Defendant's complaint fails to contain sufficient fact to establish who the Defendant is or the Defendant's relationship to the Plaintiff, or the Defendant's relationship or connection to the claim for foreclosure of a mortgage, including the failure to identify the date of the alleged assignment of the mortgage and note to the Defendant.  The Defendant alleges it is the owner

and holder of the subject note and mortgage.  These allegations are directly conflicting with the mortgage attached to the complaint, thereby rendering the complaint insufficient to identify who the Defendant is or what facts establish the standing of the Defendant to file and prosecute this foreclosure.

177.    It has been settled beyond controversy that a national bank, under federal law being limited in its powers and capacity, cannot lend its credit by guaranteeing the debts of another. All such contracts entered into by its officers are ultra vires.  Howard & Foster Co. v. Citizens Nat'l Bank of Union, 133 SC 202, 130 SE 759 (1926)

178.    When exhibits are inconsistent with the Defendant's allegations of material facts as to the real party in interest, such allegations cancel each other out.  Fladell v. Palm Beach County Canvassing Board, 772 So.2d 1240 (Fla. 2000); Greenwald v. Triple D Properties, Inc., 424 So.2d 185, 187 (Fla. 4th DCA 1983); Costa Bella Development Corp. v. Costa Development Corp., 441 So.2d 1114 (Fla. 3rd DCA 1983).

179.    Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into a contract, and which is so acted upon, constitutes 'fraud' and entitles party deceived to avoid contract or recover damages.  Barnsdall Refining Corn v. Birnam Wood Oil Co.  92 F 26 817.

## COUNT XXIV

### DEMAND FOR JURY TRIAL

180.    Plaintiff demands trial by jury of all matters so triable as a matter of right.

## COUNT XXV

### PRAYER FOR RELIEF

1  **WHEREFORE PLAINTIFFS PRAYS** for judgment against the Defendants and each

2  of them, jointly and severally, as follows:

3      a.    Assume jurisdiction of this case;

4      b.    Set aside the foreclosure sale;

5      c.    Cancel the Deed Under Power;

6      d.    Issue an Order canceling all SECURITY DEEDS Upon Sale.

7      e.    Issue an Order to vacate the SECURITY DEED.

8      f.    Issue an Order to vacate the LIEN.

9  

10      g.    Issue an Order to vacate and set aside the foreclosure sale.

11      h.    Issue an Order quieting title in favor of Plaintiff and against Defendants.

12      i.    For compensatory, special, general and punitive damages according to proof

13  against all Defendants.

14      j.    For civil penalties pursuant to statute, restitution, injunctive relief and reasonable

15  attorneys fees according to proof.

16  

17      k.    Allow recession of contract based on fraud;

18      l.    Reconsider the case by sitting a jury and certify the claims in this action;

19      m.    Award actual damages to be established at trial pursuant to 15 U.S.C. §

20  1640(a)(1);

21      n.    Award statutory damages in the amount of twice the finance charge;

22      o.    Award plaintiffs costs and reasonable attorneys fees;

23  

24      p.    Award compensatory damages in the property amount;

25      q.    Issue a Declaratory Injunction estopping any foreclosure activity currently

26  underway in any Negative Amortization loan that is the subject of this action;

27  

28

r.     Quiet Title on property in Plaintiffs';

s.     Award such other actual damages, punitive damages, and other equitable relief as the court deems appropriate.

Respectfully submitted this the 22nd day of October 2010.

JONES & ASSOCIATES

Frederick S. Jones
Attorney for Plaintiff
Georgia Bar Number 143066

105 Jonesboro Street
McDonough, Georgia 30253
(678) 583-8551 Office
(678) 818-4650 Facsimile

## REQUEST FOR ADMISSION OF MATTERS AND GENUINENESS OF DOCUMENTS

**TO:    SunTrust Mortgage, Inc.**
211 Perimeter Center Parkway
Atlanta, Georgia 30046

Plaintiffs requests Defendants to make the following admissions for the purpose of this action only, pursuant to O.C.G.A. § 9–11–36 and subject to all pertinent objections to admissibility which may be interposed at the trial:

1.    That each of the listed documents, exhibited with this request, is genuine.

2.    That each of the following listed statements is true.

3.    The original of this request has been filed with the court in accordance with O.C.G.A. § 9–11–5 and this copy is herewith served upon you, this date, in accordance with a certificate of service as attached.

*Admission number 1:*

Admit that the "Lender" in the original note and deed of trust was not the real source of the funds that were loaned to debtor to purchase the property.

*Admission number 2:*

Admit that the real or original source of the funds was from the sale of bonds, or other collateralized debt obligation security rather than from the lender's own cash reserves.  In responding to this request, if the Lender did fund the loan from its own cash reserves, but knew that it would be reimbursed from funds from the sale of bonds, or other collateralized debt obligation security, *answer in the affirmative.*

*Admission number 3:*

Admit that you cannot prove an unbroken chain of consideration in exchange for the signature of Debtor on the Note nor its transfer at closing to the current holder of the note.

1

2

*Admission number 4:*

3            Admit that the real source of the funding, the investor that purchased a mortgage backed

4      security, or asset backed security, was never the holder of the note; nor was it ever the grantee of

5      the deed of trust, and was never assigned the deed of trust.

6

*Admission number 5.*

7

8            Admit that you are not nor have ever been the holder of the note in your own right, but

9      that you are holding it as the trustee of a securitized mortgage pool, other mortgage backed

10     security, or asset backed security.

11     *Admission number 6:*

12           Admit that you cannot swear that you, the MBS Trust, SPV or other REMIC that held an

13     interest in the note, nor any of its predecessors, or successors in interest did not receive full or

14     partial payment in the form of cash or other consideration on the note from any third party or

15     other source, such as credit default swap proceeds, other credit default insurance proceeds,

16

17     private mortgage insurance, other insurance or guarantees, U. S. Troubled Asset Relief Program

18     funds (TARP bailout funds), or from income from a cross-collateralized or over-collateralized

19     source, or otherwise.

20     *Admission number 7:*

21           Admit that another person or entity held the real ownership of the note at the same time

22     that a separate person or entity was the real beneficiary of the deed of trust.

23

*Admission number 8:*

24

25

26

27

28

Admit that you cannot produce a sworn accounting or set of sworn accountings that establish and clearly show every transfer of consideration in exchange for the ownership of the beneficial interest in the note or the right to enforce the note.

*Admission number 9:*

Admit that when payments are made on the note and paid to the MBS Trust that included Debtor's Note as an asset for its investors, that the funds do not necessarily go to the specific certificate holder that is the source of the funding for the loan, nor even to the specific tranche within the pool from which such funding originated, but that the funds are applied to whatever tranche the terms of the PSA dictate such payments would be applied.

*Admission number 10:*

Admit that neither the mortgage bond issuer, mortgage bond owners, mortgage bond trust, MBS Trust, or other collateralized debt obligation security trust that funded the loan is the same entity as the mortgage backed security pool or other asset backed security pool that now claims to be the holder of the note.

*Admission number 11:*

Admit that the person or entity that claims to be the holder of the note is not the same person or entity that owns the right to receive payments on the note.

*Admission number 12:*

Admit that the person or entity that claims to be the holder of the note is not the same person or entity that owns the equitable interest in the note.

*Admission number 13:*

Admit that payments are in default to the owner of the mortgage bond or other mortgage-backed security or other asset-backed security that was the original investor.

*Admission number 14:*

Admit that there are one or more persons or entities, other than you, that could potentially claim to be entitled to enforce the note or Debtor's Obligation on its own behalf because they were the original investor or funding source.

*Admission number 15:*

Admit that you were the funding source for Debtor's loan.

*Admission number 16:*

Admit that you purchased your interest in the note from the funding source or original investor or from another person or entity that can trace their purchase of the note through purchases to the funding source and/or original investor.  Answer separately as to funding source and/or original investor if the answer is not the same.

*Admission number 17:*

Admit that you did not purchase your interest in the note from the funding source or original investor or from another person or entity that can trace their purchase of the note through purchases to the funding source and/or original investor. Answer separately as to funding source and/or original investor if the answer is not the same.

*Admission number 18:*

Admit that the certificates or un-certificated interests in the pool have been pledged as security for a separate structured finance collateralized debt obligation.

*Admission number 19:*

Admit that the pool has been pledged as security for a separate structured finance collateralized debt obligation.

*Admission number 20:*

Admit that the pool was created to satisfy the obligation of a structured finance collateralized debt obligation that existed prior to the formation of the pool, to provide additional assets or security in the event of default or other triggering event, pursuant to the terms of that structured finance collateralized debt obligation.

*Admission number 21:*

Admit that the pool has been created by pooling of multiple collateralized debt obligations, including that CDO from which debtor's loan was a part and that these separate CDOs came from multiple financial institutions.

*Admission number 22:*

Admit that the real owner of the note or the owner of the right to payments made on the note have received one or more payments on behalf of the note from one or more third party, such as credit default swap funding, other credit default insurance, private mortgage insurance, other insurance or guarantee.

*Admission number 23:*

Admit that the real owner of the note or the owner of the right to payments made on the note have received one or more payments on behalf of the note from a cross-collateralized or over-collateralized source, or otherwise.

*Admission number 24:*

Admit that the real owner of the note or the owner of the right to payments made on the note have received one or more payments on behalf of the note from U. S. Troubled Asset Relief Program funds (TARP bailout funds), or other similar program.

*Admission number 25:*

1         Admit that debtor's signature on the note and deed of trust, was intended, prior to closing,

2    to provide a vehicle, consisting of notes secured by residential real estate, for the issuance of an

3    unregulated security.

4    *Admission number 27:*

5         Admit that the organization you represent is not incorporated in Georgia.

6    *Admission number 26:*

7         Admit that the original funding source MBS Trust was incorporated in the Cayman

8
9    Islands, or other offshore location.

10   *Admission number 28:*

11        Admit that the MBS Trust or pool is a Real Estate Mortgage Investment

12   Conduit (REMIC).

13   *Admission number 29:*

14
15        Admit that you cannot prove a chain of consideration, or a chain of transfer of funds from

16   the MBS Trust to the Lender nor the funding of the loan at closing.

17   *Admission number 30:*

18   Admit that you or your organization are not the holder of the note in your own right, but that you

19   are holding it as the trustee of a securitized mortgage pool, other mortgage backed security, or

20   asset backed security.

21   *Admission number 31:*

22
23        Admit that you purchased the note from or through an MBS Trust.

24   *Admission number 32:*

25        Admit that you cannot produce an accounting or set of accountings that set forth each and

26   every time consideration was paid or transferred and the exact amounts, in the case of monetary

27

28

consideration, or exact identity of other consideration, in the case of other consideration, of each such consideration paid to the investor in the MBS Trust, or through the SPV or REMIC, whose investment funds were the original source that was loaned to Debtor.

*Admission number 33:*

Admit that the holder of the note is not the real party in interest.

*Admission number 34:*

Admit that the holder of the note is not the original source of the funding for the loan.

*Admission number 35:*

Admit that Debtor's loan was pre-sold, pledged or otherwise promised to the MBS or SPV Trust or other REMIC prior to Closing?

*Admission number 36:*

Admit that once a note is registered with MERS it has been securitized.


Respectfully submitted this the 22nd day of October 2010.


**JONES & ASSOCIATES**


Frederick S. Jones
Attorney for Plaintiffs
Georgia Bar Number 143066

105 Jonesboro Street
McDonough, Georgia 30253
(678) 583-8551 Office
(678) 818-4650 Facsimile

### PLAINTIFFS INTERROGATORIES TO DEFENDANTS

**TO:**   **SunTrust Mortgage, Inc.**
211 Perimeter Center Parkway
Atlanta, Georgia 30046

I herewith serve upon you the following written interrogatories under the provisions of O.C.G.A. § 9–11–33.

You are required to answer these interrogatories separately and fully in writing under oath and to serve a copy of your answers to me within 45 days with contemporaneous service of the complaint.

Please identify each person who answer these interrogatories and each person (attach pages if necessary) who assisted, including attorneys, accountants, employees of third party entities, or any other person consulted, however briefly, on the content of any answer to these interrogatories.

All of the following interrogatories shall be continuing in nature until the date of trial and you are required to serve supplemental answers as additional information may become available to you.

### INTERROGATORIES:

*Interrogatory number 1:*

Is the note, deed of trust or right to payment by Debtor now, or has it ever been included in a pool of mortgage assets in a MBS Trust, REMIC or other SPV Trust?

*Interrogatory number 2:*

If the note, deed of trust or right to payment by Debtor was included in a pool of mortgage assets in a MBS Trust, REMIC or other Special Purpose Vehicle, identify every entity that participated in any way, both prior and subsequent to closing, in the funding transactions that resulted in money being loaned to Debtor, and participated in any way in the note and/or

1   deed of trust transactions, meaning every bank, investment bank, originator, mortgage company,

2   other financial institution, master servicer, servicer, subservicer, underwriter, holding company,

3   investor, asset manager, collateral administrator, law firm, accounting firm, trustee, MBS Trust,

4   REMIC or other Special Purpose Vehicle.

5   *Interrogatory number 3:*

6        If the note, deed of trust or right to payment by Debtor was never included in a pool of

7   mortgage assets in a MBS Trust, REMIC or other Special Purpose Vehicle, identify all sources

8   that participated in obtaining the funds that were loaned to Debtor at closing, regardless of

9   whether the funds were from contracts, promises, agreements or sales of any tangible or

10  intangible asset, that took place prior to closing or subsequent thereto. In answering this question

11

12  without being misleading you must name every entity that participated in the funds that were

13  loaned to Debtor, meaning every bank, investment bank, originator, mortgage company, other

14  financial institution, master servicer, servicer, subservicer, underwriter, holding company,

15  investor, asset manager, collateral administrator, law firm, accounting firm, trustee, MBS Trust,

16  REMIC or other Special Purpose Vehicle.

17

18  *Interrogatory number 4:*

19       Name the actual Lender, not the lender listed on the Note and Deed of Trust (SunTrust

20  Mortgage, Inc.). This interrogatory asks for the name of the real investor, i.e., the names of the

21  owners or holders of mortgage-backed bonds. If names are not available then identify them as

22  John Does 1-1000 and Jane Does 1-1000 being the owners and holders of mortgage backed

23

24  bonds issued by the REMIC or other Special Purpose Vehicle.

25  *Interrogatory number 5:*

26

27

28

Identify the Investment Banker or Underwriter of the MBS or SPV Trust or other REMIC, and the CDO manager for said Investment Banker or Underwriter.

*Interrogatory number 6:*

Identify the Secondary markets in which any Mortgage backed Securities (bonds), that were part of the same MBS or SPV Trust or other REMIC in which Debtor's Note or Obligation was included, were traded, sold, encumbered, bought or secured with risk pooling securities or agreements, derivative or otherwise.

*Interrogatory number 7:*

Identify every other person or entity that ever owned the note, held the note, owned the right to enforce the note, or claimed any of the same from the note's inception to the present, providing all relevant dates, and providing in what capacity they held, owned or claimed to hold or own, such as whether they did so in their own right or on behalf of another person or entity.

*Interrogatory number 8:*

Supply all pertinent details, such as dates, parties to the transaction, price and similar details for all transaction in which this Note or a servicing pool containing the Note was sold or otherwise transferred to any MBS or SPV Trust or other REMIC, and if it was pre-sold thereto include all pertinent details in your answer.

*Interrogatory number 9:*

Supply all pertinent details, such as dates, parties to the transaction, price and similar details for all transactions in which this Note or a servicing pool containing this Note was sold or otherwise transferred by any MBS or SPV Trust or other REMIC.

*Interrogatory number 10:*

1
2

Supply all pertinent details, such as dates, parties to the transaction, price and similar details for all transactions in which the Note was purchased by you.

3  *Interrogatory number 11:*

4
5
6
7
8

Identify all MBS or SPV Trust or other REMICs in which you are a participant, including as a bank, investment bank, originator, mortgage company, other financial institution, master servicer, servicer, subservicer, underwriter, holding company, investor, asset manager, collateral administrator, or trustee.

9  *Interrogatory number 12:*

10
11
12
13
14
15

Provide the exact legal names of all MBS or SPV Trust or other REMICs that included this Note or the pool containing the Note, identify the pooling and service agreements in which the Note was included, identify the tranches in which the Note was included, and the precise location in all such documents, and exhibits thereto, in which the Note or Debtor's loan is listed, including any loan numbers or other identifying numbers listed therein.

16  *Interrogatory number 13:*

17
18
19
20
21
22

Fully identify all credit enhancement used in the establishment or otherwise connected with the MBS Trust or other securitization that at any time included the Note, such as Credit Default Swaps, insurance, pooling and service agreement terms, cross collateralization provisions, bond indenture terms, over-collateralization provisions, description of tranches, buy-back provisions, call provisions and reserves.

23  *Interrogatory number 14:*

24
25

Provide a detailed account of all funds paid to the MBS or SPV Trust or other REMIC from any source in the above interrogatory, as well as from any government fund source,

26
27
28

including but not limited to TARP funds, payments on notes made by Debtor, and on guarantees made by any other entity, and how each such payment was applied.

*Interrogatory number 15:*

     If a loan was removed from a MBS or SPV Trust or other REMIC, such as being returned to the originator, or any other entity, including you, in connection with such a transaction, identify any and all payments to any party pertaining to any insurance, guarantees, and CDS payments.

*Interrogatory number 16:*

     Identify any and all other payments to any party pertaining to any insurance and CDS payments, in any way pertaining to the Note or Debtor's obligation.

*Interrogatory number 17:*

     Was there any subrogation provision included in any CDS, insurance policy, or other agreement with any entity or source that provided funding on account of notes in any MBS Trust or other SPV?

*Interrogatory number 18:*

     Has the Federal Reserve received documentation granting it care, custody or control over the SPV or MBS Trust or the underlying notes and mortgages, or do you have any reason to believe that it has been granted such care, custody or control?

*Interrogatory number 19:*

     Has the U.S. Department of Treasury received documentation granting it care, custody or control over the SPV or MBS Trust or the underlying notes and mortgages, or do you have any reason to believe that it has been granted such care, custody or control?

*Interrogatory number 20:*

State the date that the note was endorsed or delivered to you or to you on behalf of the trust, or to the trust and state the amount and/or identity of each and every consideration that was paid or transferred in consideration of such endorsements or deliveries, including the date of each such payment or transfer, and the identity of the payee or transferee, and identify each and every document that can verify these facts.

*Interrogatory number 21:*

Detail all full or partial payments in the form of cash or other consideration paid by or on behalf of any and all parties obliged to pay on or because of the note to any and all parties entitled to enforce it, or arguably entitled to enforce it, including SunTrust Mortgage, Inc., MERS, you, as well as any MBS or SPV Trust or other REMIC, including but not limited to any third party trust, credit default swap party, other credit default insurance party, private mortgage insurance party, other insurance or guarantee party, U. S. Troubled Asset Relief Program (TARP bailout funds), payments from a cross-collateralized or over-collateralized source, and otherwise.

*Interrogatory number 22:*

Identify every credit default swap, other credit default insurance, private mortgage insurance, other insurance or guarantee that insures now or insured in the past the pool or its certificate holders against loss in the event of default, or downgrading of the rating of the security, or loss of market value of the security.

*Interrogatory number 23:*

List every payment received by you from the U. S. Troubled Asset Relief Program (TARP bailout funds), regardless of whether any such payment pertained to the Note.

*Interrogatory number 24:*

1  List every payment received by you from another third-party, such as credit default swap,

2  other credit default insurance, private mortgage insurance, other insurance or guarantee, and any

3  cross-collateralized or over-collateralized source, and otherwise.

4  *Interrogatory number 25:*

5  As to each and every collateralized debt obligation, structured debt collateralized debt

6  obligation, including the pool, that ever owned the note, held the note, owned the right to enforce

7
8  the note, or claimed any of the same from the note's inception to the present, identify the CDO's

9  underwriter, the asset manager, the trustee, the collateral administrator, the accounting firm and

10  the law firm or law firms that set up the CDO.

11  *Interrogatory number 25:*

12  List all areas of the enclosed certified forensic audit that are inaccurate or incorrect.

13

14  Respectfully submitted this the 22nd day of October 2010.

15

16  JONES & ASSOCIATES

17

18  Frederick S. Jones
19  Attorney for Plaintiffs
   Georgia Bar Number 143066

20  105 Jonesboro Street
   McDonough, Georgia 30253
21  (678) 583-8551 Office
   (678) 818-4650 Facsimile
22

23

24

25

26

27

28

## REQUEST FOR PRODUCTION OF DOCUMENTS

**TO:**   **SunTrust Mortgage, Inc.**
211 Perimeter Center Parkway
Atlanta, Georgia 30046

1.      I herewith serve upon you the following request for production of documents under the provisions of O.C.G.A. § 9–11–34. Defendant must serve an answer to each interrogatory separately and fully, in writing and under oath within 45 days after service to: Frederick S. Jones, 105 Jonesboro Street, McDonough, Georgia 30253.

INSTRUCTIONS

These requests for production of documents are directed toward all information known or available to SunTrust Mortgage, Inc. not its lawyers with no firsthand knowledge of the records in this instant case including information contained in the records and documents in SunTrust Mortgage, Inc's custody, control or available to SunTrust Mortgage, Inc. upon reasonable inquiry. Where requests for documents cannot be answered in full, they shall be answered as completely as possible. No answer or an incomplete answer shall be accompanied by a specification of the reasons for the lack of answer and the incompleteness of the answer and of whatever actual knowledge is possessed with respect to each unanswered or incompletely answered Request for Documents.

(i)      Please state the name(s) of the senior officer(s) having firsthand knowledge of the facts herein and their title answering this request.

(ii)      Each Request for Documents is to be deemed a continuing one. If, after serving an answer to any Request for Documents, you obtain or become aware of any further information pertaining to that Request for Documents, you are requested to serve a supplemental answer setting forth such information.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(iii)    As to every Request for Documents which you fail to answer in whole or in part, the subject matter of that document request will be deemed confessed and stipulated as fact to the Court.

(iv)    For each document or other requested information that SunTrust Mortgage, Inc. asserts is privileged or is not discoverable, identify that document or other requested information. State the specific grounds for the claim of privilege or other grounds for exclusion.

(v)    For each document that SunTrust Mortgage, Inc. claims is not discoverable, state (1) the information required by the definition of "document" below, (2) the author's job title and address, (3) the recipient's job title and address, (4) the name and job title of all persons to whom it was circulated or who saw it, (5) the name, job title, and address of the person now in possession of the document, and (6) the document's present location.

(vi)    For a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or when it could no longer be located, and state the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

(vii)    As to every Request for production which you fail to answer in whole or in part, the subject matter of that production will be deemed confessed and stipulated as fact to the Court.

(viii)    Answer each request for production separately by listing the documents and by describing them as defined below. If documents are numbered for production, in each response, provide both the information that identifies the document and the document's number.

DEFINITIONS

The following terms have the following meanings, unless the context requires otherwise:

(ix)    Parties. The term "Plaintiffs" or "defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, means the party and, where applicable, {his/her/its} agents, representatives, officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(x)     Person. The term "person" means any natural person, any business, a legal or governmental entity, or an association.

(xi)    Document. The term "document" is synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a) and includes computer records in any format. A draft or non-identical copy is a separate document within the meaning of this term. The term "document" also includes "any tangible things" as that term is used in Rule 34(a).

(xii)   Communication. The term "communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

(xiii)  Identify (person). When referring to a person, "identify" means to give to the extent known the person's full name, present or last known address, telephone number, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in compliance with this paragraph, only the name of that person needs to be listed in response to later discovery requesting the identification of that person.

(xiv)   Identify (document). When referring to a document, "identify" means to give, to the extent known, the following information: (1) the type of document; (2) the general subject matter of the document; (3) the date of the document; (4) the authors, addressees, and recipients of the document; (5) the location of the document; (6) the identity of the person or entity who has

1   custody of the document; and (7) whether the document has been destroyed, and, if so, the (a)

2   date of its destruction, (b) reason for its destruction, and (c) identity of the person who destroyed

3   it.

4          (xv)    Relating. The term "relating" means concerning, referring, describing,

5   evidencing, or constituting, directly or indirectly.

6          (xvi)    Any. The term "any" should be understood in either its most or it's least inclusive

7   sense as necessary to bring within the scope of the discovery request all responses that might

8   otherwise be construed to be outside of its scope.

9   

10          (xvii)   The connectives "and" and "or" should be construed either disjunctively or

11   conjunctively as necessary to bring within the scope of the discovery request all responses that

12   might otherwise be construed to be outside of its scope.

13          xviii)   Number. The use of the singular form of any word includes the plural and vice

14   versa.

15          (xiv)    SunTrust Mortgage, Inc. includes any and all persons, all past and current

16   employees and agents acting, for in concert or behalf of SunTrust Mortgage, Inc. each of your

17   directors, employees, fiduciaries, representatives and agents, of this allege Plaintiffs, and any

18   

19   individual over which this allege Plaintiffs, exercises the power to control and direct as well as

20   everyone acting for or on behalf of SunTrust Mortgage, Inc. having firsthand knowledge.

21          (xx)    "Documents" or "documents" means writings of every kind and character

22   pertaining to the designated subject matter, including, without limitation and not limited to, the

23   original and a certified copy, regardless of origin or location, of any regulation, court decision,

24   book, pamphlet, periodical, letter, memorandum, file, note, diary, calendar, newspaper,

25   magazine, statement, bill, invoice, order, policy, telegram, correspondence, summary, receipt,

26   

27   

28

opinion, investigation statement or report, schedule, manual, financial statement, audit, tax

return, articles of incorporation, bylaws, stock book, minute book, agreement, contract, deed,

security agreement, mortgage, deed of trust, title or other insurance policy, report record, study,

Note which indicates or constitutes evidence of debt, monetary instrument, contract for services

or transfer of money between Plaintiffs and any other person (natural or artificial), hand written

note, map, drawing, working paper, chart, paper, draft, index, tape microfilm, e-mail, data sheet,

data processing card, computer printout, computer program, check, bank statement, passbook or

other written, typed, printed, photocopied, dittoed, mimeographed, recorded, transcribed,

punched, taped, filmed, photographic or graphic matter, however produced, to which you have or

have not had access.

(xxi)   The term "equity in the original note" refers to the fact that not only does

SunTrust Mortgage, Inc. have physical possession of the original promissory note and custody

like a fiduciary, but must have also vested financial interest in such: it legally belongs to

SunTrust Mortgage, Inc.

*Request for production 1:*

A copy of all agreements between the bond, mortgage bond, or mortgage bond trust and

the "Lender" and/or any "Beneficiary" of the Note.

*Request for production 2:*

A copy of the mortgage bond indenture from the bonding source that provided the funds

that were directly or through other entities loaned to Debtor.

*Request for production 3:*

1

2   A copy of all mortgage pool servicing agreement, or other document that serves the same

3   purpose, in which Debtor's Note or Obligation was ever included as an asset in any mortgage

    backed security or asset backed security.

4   *Request for production 4:*

5

6   A copy of all documents that set forth the powers and authorities of the trustee, or you, to

7   act on behalf of the pool or certificate holders, and include any resolutions or other special

    authorizations that provided powers or authority to the trustee that are pertinent to the note

8

9   and/or deed of trust.

10  *Request for production 5:*

11  Produce a sworn accounting or set of sworn accountings that establish that there has been

12  an unbroken chain of consideration for the transfer of the real ownership of the note from the real

13  source of the funding of the loan to the current purported real holder of the note and that set forth

14  each and every time consideration was paid or transferred and the exact amounts, in the case of

15

16  monetary consideration, or exact identity of other consideration, in the case of other

17  consideration, of each such consideration.

18  *Request for production 6:*

19  Produce the original note in Court at the upcoming evidentiary hearing on the motion for

20  relief from stay. Be advised that you must produce the original blue inked note in Court. A copy

21  will not be accepted. Only the original note is an instrument.

22  *Request for production 7:*

23

24  Provide an accounting of all consideration paid to the purported real holder of the note

25  nor any of its real predecessors in interest that detail all full or partial payments in the form of

26  cash or other consideration on the note from any third party trust, such as credit default swap

27

28

1   funding, other credit default insurance, private mortgage insurance, other insurance or guarantee,

2   U. S. Troubled Asset Relief Program (TARP bailout funds), payments from a cross-

3   collateralized or over-collateralized source, or otherwise.

4   *Request for Production 8:*

5       If true, produce an unsworn declaration under penalty of perjury that there has been no

6   consideration from any third party trust, such as credit default swap funding, other credit default

7   insurance, private mortgage insurance, other insurance or guarantee, U. S. Troubled Asset Relief

8   Program (TARP bailout funds), payments from a cross-collateralized or over-collateralized

9   source, or otherwise to the purported real holder of the note nor any of its real predecessors in

10   interest.

11

12   *Request for Production 9:*

13       Produce all documentation that can verify the details of each and every consideration that

14   was paid or transferred in consideration of all endorsements and/or deliveries of the Note,

15   including the date of each such payment or transfer, and the identity of the payee or transferee.

16

17   *Request for production 10:*

18       If the MBS or SPV issuer defaulted in whole or in part, or is it about to default, produce

19   documentation that provides information pertaining to said default.

20   *Request for production 11:*

21       Provide any documentation that provides any information concerning the write-down of

22   value of MBS or SPV securities that was declared by CDO manager/Trustee of the MBS or SPV

23   Trust.

24

25   *Request for production 12:*

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Provide all of your records and other information in your possession and those of your parent companies, affiliates, subsidiaries and any other entity from whom you have a right to obtain document and records delivery, pertaining to the loaned funds, the note, payments or other transactions for purchasing the note or rights in the note, servicing rights, transfer of servicing rights, and payments made on the note.

*Request for production 13:*

Provide a complete copy of all records and other information in the possession of MERS pertaining to the loaned funds, the note, payments or other transactions for purchasing the note or rights in the note, servicing rights, transfer of servicing rights, and payments made on the note. As a member or MERS you are entitled to this information on request. Debtor knows you are a member of MERS because you are listed as such on its website.

*Request for production 14:*

Provide all SEC filings, pooling and servicing agreements, Trust Agreements, all prospectus, any sales agreement, master service agreements, assignments, assumptions, copies of indorsed notes, alonges, reports and exhibits showing contents of MBS or SPV Trust, including the contents of the total pool, as well as the contents of each tranche. Include and pinpoint for Debtor where in these documents his specific note can be found in the "roll," "exhibits," or otherwise in said documents.  These generally provide the actual mortgage amount, origination date, type of mortgage, balloon date and state of origination, which one can use to locate this particular mortgage.

*Request for production 15:*

Provide a copy of the bond indenture provided to the holders of mortgage-backed bonds in which Debtor's Note or Obligation was pooled as an asset in favor in said bond holders.

*Request for production 16:*

Provide a complete history of secondary market activity for the MBS, SPV, or other REMIC, pertinent to Debtor's Note, with dates and printout or copies if available.

*Request for production 17:*

Provide documents containing the history of each Trust or other SPV that the Note was included or otherwise involved in, including its current status, and that whether each MBS Trust SPV or other SIV was ever reported to the SEC.

*Request for production 18:*

Provide copies of any instrument created the Trust.

*Request for production 19:*

Provide all copies of the Distribution Reports for all MBS Trusts and SPV that ever included or involved the Note that were provided to the mortgage bondholders, MBS certificate owners, other investors, SEC, or other person or entity.

*Request for production 20:*

Produce all documentary evidence that you purchased the note from SunTrust Mortgage, Inc. and/or whoever else you purchased it from.

*Request for production 21:*

Provide copies of all insurance policies, and other guarantee or CDS documentation.

*Request for production 22:*

Provide a copy of the documentation that contained any subrogation provision included in any CDS, insurance policy, or other agreement with any entity or source that provided funding on account of notes in any MBS Trust or other SPV

*Request for production 23:*

1    If the MBS or SPV issuer defaulted in whole or in part, or is it about to default, provide

2    all available documentation that details said default or impending default.

3

4    Respectfully submitted this the 22nd day of October 2010.

5

6                                  **JONES & ASSOCIATES**

7

8                                Frederick S. Jones

9                                Attorney for Plaintiffs

10   105 Jonesboro Street               Georgia Bar Number 143066
     McDonough, Georgia 30253

11   (678) 583-8551 Office
     (678) 818-4650 Facsimile

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. **<u>AUDITOR ANALYSIS</u>**

**David & Shatei Smith**

**4490 Berline Dr., Lithonia, GA 30038**

**FHA 1051474200 MIN 100010401334299282     FMFN/0133429928**

**David & Shatei Stephenson Smith's mortgage appears to contain multiple levels of clear and consistent pattern & practice of violations by** SUNTRUST MORTGAGE, INC.   901 Semmes Avenue, Richmond, VA 23224 and Atlanta Office, 211 Perimeter Center Pkwy. Atlanta, GA 30046.

David & Shatei Stephenson Smith's refinanced their property at 4490 Berline Dr., Lithonia, GA 30038 with Sun Trust Mortgage, Inc. who refinanced a FHA loan of $157,297.00 @ **6.00%** for **30 years closed on August 21, 2003.**
The MIN # 100010401334299282 substantiates that their promissory note was securitized without disclosure, which may cause lack of standing to execute the terms of the mortgage attached to the property located at 4490 Berline Dr., Lithonia, GA 30038.
The file lacks many important documents, for which this audit will advise QWRs repeatedly.    1003, CONSUMER BKLT/BILLING RIGHTS, INACCURATE APR DISCLOSURE, are all disclosure violations. Nevertheless, the HUD1, TILA DISCLOSURE, GFE, Note and the Security Deed, etc provide a plethora of salient information that allows us to see clear progressions and hard number inconsistencies in the undertaking that reflect worries and concerns the LENDER and BROKER had, more for themselves, than for the BORROWER and such concerns might translate to various violations, to Predatory Lending practices, and to multiple Breaches of Fiduciary Duty.    It will never be possible to articulate each and every mishap, or every factor that made this a risky and suspect loan.   But the noted FACTS, whether regarding innocent mistakes or otherwise, demonstrate a failure of the LENDER and BROKER to tend to the details of the process in a responsible manner.    Factors contributing to the above analysis will be revisited throughout this Audit as violations or indications of Predatory Lending -Remedies.

## <u>FRAUD</u>

Evidence of context would enable a court of law to consider this contract as unconscionable per UCC 2-302.   The Note as well as the TILA disclosure **misrepresents** this loan as a FHA -30 yr FIXED LOAN.   The payment schedule discloses the discrepancy that the monthly payments vary from 1,007.47 to $995.16 for eleven and ½ years.  Only after 11.5 years would the payment adjust to $943.25.  This produces a negative amortization of the loan.   11.5 years of deferred payments equals accumulation of approx. **$81,577 in negative amortization** added on to the loan amount.

**THIS IS A WILLFUL VIOLATION INTENDED TO MISLEAD THE CONSUMER and DEFRAUD THE CONSUMER FOR MORE MONEY.**

1    UCC § 2-720. Effect of "Cancellation" or "Rescission" on Claims for
     Antecedent Breach.

2                              **APPRAISAL**

3    Smith requested appraisal several times because they were suspect of the
     value of the property given.    The appraisal was never received, but should
4    be requested in the official QWR.

5

6           **AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE**

7

8    **SunTrust Mortgage, Inc.** is a subsidiary of SunTrust Bank, which is
     headquartered in Atlanta Georgia.   Sun Trust Mortgage was formerly doing
9    business as Crestar Mortgage.   Sun Trust Mortgage was licensed as number
     6418 but remains on the inactive file with the State of Georgia for not
10   renewing its license since 08-08-2000.   Unless, there is a substantiated
     waiver, Sun Trust Mortgage, Inc. was in **violation** to conduct their mortgage
11   business in the state of Georgia at the time Sun Trust Mortgage brokered the
     Smith's loan. (see Data section of audit)

12   Sun Trust Mortgage failed to disclose its true relationship with First
     American Financial Mortgage Corp., license #17006 as a broker.    Both Sun
13   Trust Mortgage and First American Financial Mortgage Corp. actually co-
     brokered the Smith mortgage. Neither mortgage companies were registered as
14   **lenders** by the State of Georgia, Department of Banking & Finance.    Thus,
     this becomes a willful fraudulent misrepresentation by Sun Trust Mortgage,
15   Inc. as the <u>lender on the Note.</u>   Neither company qualifies per the definition
     as the "lender" either by licensing or in the advancement of consideration,
16   "money".*

17   Further investigation may find that enrichment  is verified on the part of

18   the participating brokers, but these actual parties are unable to verify

19   their contribution of  consideration in the enforcement of a negotiable

     instrument  per  UCC § 3-303. VALUE AND CONSIDERATION. This is further
20
     substantiated by the MIN number and the re-indexed numbers 101-304114 and
21
     77945-00000.   These are RED Flag indicators that conversion of the promissory
22   note into a security certificate traded by Investment companies took place.

     Such note conversion is *an unauthorized act that deprives an owner of*
23
     *personal property without his or her consent  and  may* determined by the
24
     original nature as a <u>Cause of Action</u> for a lawsuit.

25

26   *<u>Entity</u> that <u>advances</u> <u>cash</u> to a borrower for a stated <u>period</u> and for a fixed
     or <u>variable</u> <u>rate of interest</u>, with or without a <u>security</u> other than the
27   <u>borrower's</u> <u>signatures</u>.

28

1

2

## MERS

3   The mortgage was processed through the Mortgage Electronic Systems (MERS) to become the nominee for the alleged Lender.  However MERS failed to register to conduct business in Georgia as a foreign corporation.  MERS applied for a

4   name reservation in 2009 but **never** completed the foreign corporation filing.

5

6   Whereas, the original note was not endorsed to MERSCORP, Inc. (MERS).In order for the claimant to prove itself to be the real party in interest to support a proof of claim or motion for relief from stay in bankruptcy as well as to

7   prove itself to be a holder in due course, they have to prove the **entire chain** of "ownership" and "holdership" of the Note complete with proof o value

8   paid to purchase the note ownership.

9

10   Fatal flaw in Homeowner's Title/ Lender is Unsecured:   Per the MERS nominee assignment in the Deed of Trust, Lender has **SPLIT** the Note and Mortgage.   The 2009 Kansas Supreme Court (Case No. 98,489 **Landmark National**

11   **Bank v. Boyd A. Kesler**) held that a nominee company called MERS has **NO RIGHT** or standing to bring action for foreclosure in the event a mortgage loan

12   separates inters of the note and deed of trust, with the deed of trust lying with some independent entity, the **MORTGAGE is UNENFORCEABLE.**   In summary,

13   homeowner's title may be flawed due to the split of the Note and Mortgage resulting in the Lender being unsecured.

14

15   Claimant must be required to proof their claim by providing authentic documents of complete chain of assignments from MERS to assignee/successors,

16   original blue-ink note for inspection at the court,   properly executed and dated per the PSA and offering documents or governing master agreement

17   between the sellers and purchasers  of the security agreements.

18

19   Whereas, Georgia Code OCGA § 44-14-162.2 allows only the secured creditor  to conduct a  Non -judicial  foreclosure in Georgia , therefore, the claimant must proof  their standing as the secured creditor produce all authentic

20   documents to proof their standing to foreclosure.

21

22   The MIN ## 100010401334299282 is the re-indexed number from Mortgage Electronic Registration System (MERS), the problem for MERS is that they

23   actually buy the mortgage from the origination lender.  Therefore, the lender has no standing to initiate foreclose proceedings because their debt has been paid. (see allonge to the note)  Now the court has ruled that neither MERS

24   nor the securities holders have **standing** either because they were not signatories to the original contract. In other words, for the time being, at

25   least, in several states these mortgages have been ruled to be unenforceable.

26   The court held in a landmark ruling (Landmark National Bank v. Kesler, 2009 Kan. LEXIS 834) that a private company, Mortgage Electronic

27

28

Registration System (MERS), has no right or standing to bring a foreclosure action. This is bad news for not only MERS, but that in the big money center banks well over half of all new U.S. residential mortgage loans are recorded in MER's name.

MERS keeps track of the ever-changing ownership of home mortgages as they are sliced and diced into financial products called "collateralized debt obligations" (CDOs), which were then insured against default by derivatives called "credit default swaps." (another layer of bifurcation)

Securitization: Alert

The Distribution of the note through securitization pools may cause bifurcation of the mortgage loan. As the mortgage documents  with its terms and assignments are housed in the public record but separated from the promissory note which becomes hidden into custody of unknown undisclosed parties.  The promissory note which is the negotiable instrument becomes sold and severed from the mortgage.  If and when securitization occurs by bundling or pooling of the notes to convert the pools into security certificates that are traded and sold the severance becomes absolute. This is a violation of UCC 3-407, a material alteration to the original contract.

## YSP/Enrichment

A "yield spread premium" (YSP) is the money or rebate paid to a mortgage broker for giving a borrower a higher interest rate on a loan in exchange for lower upfront costs, generally paid in Origination Fees, Broker Fees or Discount Points. This "may [be used to] wipe out or offset other loan costs, like Loan Level Pricing. Under today's marketplace YSP is exposed as a form of enrichment for the brokers.

 First American Financial was paid $1,910.23 directly from borrowers and **paid** again a Yield Spread Premium of $ 3,735.80 paid by Sun Trust Mortgage.  This is a definite **RED FLAG** as the borrower is being charge a higher interest than what he/she qualified for, to get back door fees from the lender.   Today, such a practice shows clear and consistent violations in pattern of **breach of fiduciary** duty from the mortgage broker.

This loan was written for the enrichment of the brokers.   This loan was flipped from a loan closed on 12/02 at the balance of $150,613 and refinanced less than 1 year later for the amount of $157, 297.00 closed 06/2003.  Both loans were FHA; each had additional protective services to prevent borrowers from defaulting.  The Smiths should have been referred to homeowner counseling services vs. refinancing them into deeper debt, with no obvious benefit to the Smiths.

## TILA DISCLOSURE

By using the OCC calculator, the TILA APR DISCLOSURE is in **material violation**.  The Note falsely stated $943.09 when the actual payment was undercharged from $977.41.   This causes a negative amortization against the

principal amount and usually paid at the end of the loan period.   The amount of error in the payment is $34.33. **This is a serious APR VIOLATION.** 15 U.S.C. Sec. 1638, 12 C.F.R. Sec. 226.17-18.

- The TILA payment disclosure undercharged by *$34.33 per month total* for **30** year period is $13,045.40 of *negative amortization*.
  This is a **material violation.**   *see APR printout


**The foreclosure tolerance for error is only $35, which triggers right to rescind.** 12 C.F.R. 226.23(h), and $100 (for monetary damages), 12 C.F.R. 226.18(d)(1)

Using the OCC calculator, the understatement of the note interest will adversely affect information provided to the consumer. The APR was stated a 6 % instead 6.3369%.   **THIS IS A MATERIAL VIOLATION of .3369%.   This FAILURE IN DISCLOSURE, which   trigger extended rescission rights.**

### 1003 Application

In that, 1003 application was not in the copy file is suspect due to standards  require to determining the income and debt ratios.  However , copies of the credit bureau statements show debt accounts as excessive.  The wife of Mr. Smith was said to be self employed.  Credit Bureaus noted " 010 rating", that is the code to identify that proportion of balances to credit limit were high.  Experian/Fair, Isaac scored **594,** which is a higher range of risk.  The score of 620 is considered a conventional risk indicator.

### Common Predatory Lending Practices found in this loan.

The following types of predatory practices are discussed:(I) over-escrowing; (ii); improper adjustments of interest on TILA disclosure  (iii) Fiduciary breach

> Over-escrowing - HUD 1 - reveals 4/6 months escrow
> **(Violation)**

> On May 9, 1995, in response to the litigation and complaints concerning over-escrowing, HUD issued a regulation implementing section 10 of RESPA.16 The HUD regulation: 1. Provides for a maximum two-month cushion, computed on an aggregate basis (i.e., the mortgage servicer can require the borrower to put enough money in the escrow account so that at its lowest point it contains an amount equal to two months' worth of escrow deposits); 2. Does not displace contracts if they provide for smaller amounts; and 3. Provides for a phase-in period, so that mortgage servicers must fully comply by October 27, 1997.

- APR   misrepresentation * **(Violation)**
  Grounds for legal challenges to improper ARM
  adjustments include breach of contract, TILA,87 the
  Uniform Consumer Credit Code,88 RICO,89 state unfair
  and deceptive practices statutes,90 failure to
  properly respond to a ''qualified written request''
  under section 6(e) of RESPA, and usury.

- Fiduciary breach –
  Breaches of Fiduciary Duty Most courts have held
  that a mortgage broker is a fiduciary. One who
  undertakes to find and arrange financing or
  similar products for another becomes the
  latter's agent for that purpose, and owes
  statutory, contractual, and fiduciary duties to
  act in the interest of the principal and make
  full disclosure of all material facts. ''A
  person who undertakes to manage some affair for
  another, on the authority and for the account of
  the latter, is an agent.''

  Courts have described a mortgage loan broker as an
  agent hired by the borrower to obtain a loan.   As
  such, a mortgage broker owes a fiduciary duty of the
  ''highest good faith toward his principal,'' the
  prospective borrower.   Most fundamentally, a
  mortgage broker, like any other agent who undertakes
  to procure a service, has a duty to contact a
  variety of providers and attempt to obtain the best
  possible terms.

    - Additionally, a mortgage broker ''is 'charged with the
      duty of fullest disclosure of all material facts
      concerning the transaction that might affect the
      principal's decision'.''

### RESCISSION

Truth-in-Lending Act generally applies to refinance of loans.
However, a legal right to cancel a contract if his or her consent
to it was obtained by fraud or other material misrepresentation
or fails in some important way through no fault of their own may
be canceled.

A. Rescission for Fraud, Mistake, Undue Influence, Breach,
   Illegality
B. Fraudulently executed contract void

C. Unconscionable contract unenforceable.

Underwriting Standards:

I was unable to review the documents used to approve the loan. However, material violations are within documents that were in the copy file.   It is my opinion that the borrower stated his income on the loan application and that stated income was used as the basis for the loan approval.   To enable the lender to make an informed lending decision and access the risk the lender MUST identify the source of the repayment and assess the ability of the borrower to repay the loan in a timely manner.   Recognizing that loans to subprime borrower's present elevated credit risk, institutions should verify and document the borrower's income (both source and amount), assets and liabilities with exact amounts financed. Stated income and reduced documentation loans to subprime borrowers should be accepted only if there are mitigating factors that clearly minimize the need for direct verification of repayment capacity.   Reliance on such factors also should be documented. Mitigating factors might include situations where a borrower has substantial liquid reserves or assets that demonstrate repayment capacity and can be verified and documented by the lender.   However, a departure from fundamental principles of loan underwriting generally forms the basis of abusive lending: lending without a determination that a borrower can reasonably be expected to repay the loan from resources unless all the information has been properly disclosed and calculated for an informed decision.   For a lender to use the collateral securing the loan, and relying instead on the foreclosure value of the borrower's collateral to recover principal, interest, and fees. It is abusive. After examining the loan documents and reviewing the characteristics of the loan, I believe the borrower has a valid claim for **rescission, setoff and recoupment.**

The OCC believes that a fundamental characteristic of predatory lending is the provision of credit to borrowers who simply cannot afford the credit on the terms being offered.   Typically, such credit is underwritten predominantly on the basis of the liquidation value of the collateral, without regard to the borrower's ability to service and repay the loan according to its terms, absent resorting to that collateral.   When a loan has been made based on the foreclosure value of the collateral, rather than on a determination that the borrower has the capacity to make the scheduled payments in accordance with the terms of the loan, the lender is effectively relying on its ability to seize the borrower's equity in the        collateral to satisfy the obligation (including accrued interest) and to recover the typically high fees associated with such credits.   It is the opinion of the examiner that the lender may have violated their Fiduciary Responsibility by:

1 - The lender failing to make a reasonable determination if the borrower could qualify for the home loan before closing the loan.

2 - Placing the borrowers into a loan whereby it was likely the borrowers would default or incur bankruptcy as a result of the loan and it was reasonably foreseeable that such would occur.

3 -Knowingly and willingly placed the borrowers into a predatory loan, which resulted in excessive fees to enrich the Mortgage Broker & its affiliations

Supporting Case Law:

  o Am. Bankers' Ins. Co. v. Wells, 819 So. 2d 1196 (Miss. 2001)
  o Barrett v. Bank of America 229 Cal. Rptr. 16 (Ct. App. 1986)
  o Charles well v Chase Manhattan Bank, N.A., 308 F. Supp. 2d 545 D.
   V. I. 2004

   CAUSES OF ACTION THAT MAY APPLY TO PREDATORY LENDING CLAIMS

Unfair competition:  Unfair competition includes, unfair or fraudulent
business ct or practice.  (Check  State Business & Prof. codes)
Concerns re: Preemption – misrepresented material terms or benefits of the
loans, for example that defendant represented to a Plaintiffs that the
interest rate on a loan would be 5% when in fact the interest rate was
actually 7%.

1. False advertising
2. Consumers Legal Remedies Act.
3. Breach of Duty:  show existence of a fiduciary relationship, its breach
and damage caused by breach.
4. RESPA
5. Aiding and Abetting Breach of Fiduciary Duty
6. Fraud Causes in Action.
7. Fraud and Deceit
8. Negligent Misrepresentation.
9. Breach of Contract
10. RICO

  This is a certified forensic auditor analysis conducted
  based on empirical data derived from regulations guiding
  the audit of loan transactions referenced by the following
  documents.

### D. Alex-Saunders

_____

D. Alex-Saunders, PhD., CFLA, Basel ii

*References:*
*Book of Commercial Review*
*OCC Handbook*
*UCC*
*TILA Handbook*
*Caselaw Proof of Claim*

1

**STATE OF GEORGIA**

**COUNTY OF DEKALB**

### VERIFICATION

PERSONALLY APPEARED before me, the undersigned officer duly authorized to administer oaths, *David Smith* who, after first being duly sworn, states on oath that the information contained in the within and foregoing *Plaintiffs Complaint for (1) Negligence, (2) Fraud, (3) To Set Aside Property Sale, (4) To Void/Cancel Trust Deed Upon Sale, (5) To Void/Cancel Assignment of Trust Deed, (6) Wrongful/Unlawful Foreclosure, (7) Breach of Implied Covenant of Good Faith and Fair Dealing, (8) Unjust Enrichment, (9) Quiet Title, (10) Slander of Title, (11) Violation of RICO Laws, (12) Violations of TILA Laws, (13) Violations of RESPA Laws, (14) Violations of HERA Laws, (15) Violations of HOEPA Laws, (16) Violations of Due Process* is a true and correct to the best of my knowledge and belief.

This the 22nd day of October, 2010.

David Smith, Plaintiffs

Sworn to and subscribed before me this, the 22nd day of October, 2010.

Notary Public

My Commission Expires:

**STATE OF GEORGIA**

**COUNTY OF DEKALB**

### VERIFICATION

PERSONALLY APPEARED before me, the undersigned officer duly authorized to administer oaths, *Shantei Smith* who, after first being duly sworn, states on oath that the information contained in the within and foregoing *Plaintiffs Complaint for (1) Negligence, (2) Fraud, (3) To Set Aside Property Sale, (4) To Void/Cancel Trust Deed Upon Sale, (5) To Void/Cancel Assignment of Trust Deed, (6) Wrongful/Unlawful Foreclosure, (7) Breach of Implied Covenant of Good Faith and Fair Dealing, (8) Unjust Enrichment, (9) Quiet Title, (10) Slander of Title, (11) Violation of RICO Laws, (12) Violations of TILA Laws, (13) Violations of RESPA Laws, (14) Violations of HERA Laws, (15) Violations of HOEPA Laws, (16) Violations of Due Process* is a true and correct to the best of my knowledge and belief.

This the _____ day of _____ 2010.

_____
Shantei Smith, Plaintiffs

Sworn to and subscribed
before me this, the ____
day of _____, 2010.

_____
Notary Public
My Commission Expires:



## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that I have this day served opposing counsel with a true and correct copy of the foregoing *Plaintiffs Complaint for (1) Negligence, (2) Fraud, (3) To Set Aside Property Sale, (4) To Void/Cancel Trust Deed Upon Sale, (5) To Void/Cancel Assignment of Trust Deed, (6) Wrongful/Unlawful Foreclosure, (7) Breach of Implied Covenant of Good Faith and Fair Dealing, (8) Unjust Enrichment, (9) Quiet Title, (10) Slander of Title, (11) Violation of RICO Laws, (12) Violations of TILA Laws, (13) Violations of RESPA Laws, (14) Violations of HERA Laws, (15) Violations of HOEPA Laws, (16) Violations of Due Process, Request for Admission of Matters and Genuineness of Documents, Plaintiffs First Interrogatories to Defendant, Request for Production of Documents; Auditor Analysis and Verification of Shatei Smith and Verification of David Smith* by United States mail with proper postage affixed to assure delivery of same, addressed to:

**SunTrust Mortgage, Inc.**
1001 Semmes Avenue
Richmond, Virginia 23224

Respectfully submitted this the 22nd day of October 2010.

JONES & ASSOCIATES

*(signature)*

Frederick S. Jones
Attorney for Plaintiffs
Georgia bar Number 143066

105 Jonesboro Street
McDonough, Georgia 30253
(678) 583-8551 Office
(678) 818-4650 Facsimile